UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

    JAMES D. LIGHT                        CASE NO.  06-33641
    ROSEMARIE S. CUSHMAN           Previous Case No. 05-71906

                          Debtors
--------------------------------------------------------
APPEARANCES:

STEFAN D. BERG, ESQ.
Attorneys for Debtors
309 Arnold Avenue
Syracuse, New York 13210

LYNN HARPER WILSON, ESQ.
Staff Attorney for Chapter 13 Trustee
250 S. Clinton St., Suite 203
Syracuse, New York 13202


Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge


**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**


      Presently pending before this Court is a motion to vacate an Order dismissing the within Chapter 13 case, which Order was entered on February 2, 2006 ("Dismissal Order").  This motion was filed on February 6, 2006 and was opposed by the Chapter 13 Trustee who also requested that sanctions be imposed against Debtors' attorney.

      The motion was initially heard by the Court at its February 21, 2006 motion term in Syracuse, New York.  The hearing was then consensually adjourned to April 18, 2006, May 23, 2006, June 27, 2006 and, finally, to July 20, 2006.  Following the July 20th hearing, the Court directed the parties to submit memoranda of law solely on the issue of whether or not sanctions

should be imposed on Debtors' counsel pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.").[1]

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(M) and (O).

### FACTS

The Debtors are no strangers to the bankruptcy process. The Debtor James Light initially filed a voluntary bankruptcy petition pursuant to Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 ("Code"), on September 10, 2003 (Case No. 03-66168). He received a discharge January 7, 2004. On June 1, 2004, the Debtors filed their initial joint petition pursuant to Chapter 13 of the Code[2]. The filing (Case No.04-63979) was dismissed by an Order, dated August 19, 2004. On October 18, 2004, the Debtors filed a second joint Chapter 13 case (Case No. 04-67194). That case was also dismissed on August 10, 2005. On October 14, 2005, Debtors filed

---

[1] In response to the Debtors' motion to vacate the Dismissal Order, the Chapter 13 Trustee, Mark Swimelar, Esq., requested not only that the motion be denied but also that the Court impose sanctions on Debtors' counsel. At the hearings on the motion held on February 21st and April 18th, the Court ruled orally that it would not vacate the Dismissal Order, and that it was agreeing to adjourn the motion solely on the issue of sanctions. No order has been entered on the electronic docket denying the motion to vacate as of the date hereof.

[2] At the time of that filing, Debtors were married to each other but subsequently divorced.

this, their third joint petition pursuant to Chapter 13. As indicated, the current case was dismissed with prejudice by the Dismissal Order. In each of these bankruptcy cases, the Debtors were represented by their current counsel, Stefan D. Berg, Esq. ("Berg").

Debtors' first joint case was dismissed when the Debtors failed to comply with a Conditional Order of the Court directing them to file a Chapter 13 plan and serve notice of a confirmation hearing on the plan within 15 days of the date of the Order. The second joint case was dismissed for the Debtors' non-payment pursuant to the terms of their confirmed plan. The current case was dismissed, with prejudice, when the Debtors, following the denial of confirmation of their initial plan, failed to file a new plan and notice same for confirmation within 15 days of the date of a conditional order.

## ARGUMENTS

In support of his request for sanctions, the Chapter 13 Trustee argues that Berg should be sanctioned for a number of reasons relating to his preparation of the Debtors' current Petition, Schedules and Plan. He cites the following: a) the Debtors failed to provide notice of an amended (sic) plan for confirmation; b) the Plan dated October 14, 2004(sic) indicated that the Debtors would make no payments for 36 months with a resultant dividend to unsecured creditors of 0%; c) the Petition indicated that the Debtors had filed only one prior bankruptcy when in fact they had filed two prior joint cases; d) the Debtors' Summary of Schedules lists no priority claims, no current income or expenses and the inaccurate listing of secured creditors; e) Schedule A to the Debtors' Petition listed the Debtors' real property, with a value of $200,000, as being

free of liens; f) Schedule B to the Petition appeared to be inaccurate as it listed only household goods, wearing apparel and a motor vehicle as the items of the Debtors' personal property; however, at the meeting of creditors held in the case Debtor James D. Light, testified that he was a stockholder in a corporation. The Trustee also alleged that the Petition failed to list life insurance owned by the Debtors; g) Schedule D, attached to the Petition, failed to list the mortgage holder on the Debtors' residence, but did list a lienholder on the Debtors' motor vehicle, which Debtors testified at the meeting of creditors had been paid off; h) Schedule E to the Petition listed the Internal Revenue Service as well as the New York State Department of Taxation and Finance in unknown amounts even though those amounts could have been easily determined by reviewing the Debtors' prior petitions; i) Schedule I to the Petition, which requests information as to the Debtors marital status, occupations and dependents was left blank, as was that portion of the Schedule which requires a debtor to list his/her monthly income; j) Schedule J to the Petition, which requires a debtor to list monthly expenses, was also blank; k) Berg did not complete the Schedule required by Fed.R.Bankr.P. 2016(b), which discloses the amount of fees agreed to be paid to him and the amount, if any, paid pre-petition; l) Berg had failed to properly complete the Debtors' petitions and schedules in the Debtors' prior Chapter 13 cases in a similar fashion. (*See* Affirmation of Mark W. Swimelar in Response to Debtors' Motion and In Support of Sanctions at paragraph 6).

Berg argues that sanctions should be imposed only in the case of a bad faith filing and the most recent Chapter 13 case filed by the Debtors was made in good faith with the "full intent that a Chapter 13 Plan would be confirmed." (*See* Berg's Memorandum of Law in Opposition to the Imposition of Sanctions, dated May 18, 2006). He cites a number of cases in which courts

considered the imposition of sanctions, noting that only where the bankruptcy petition has been filed with an intent to harass a creditor, cause unnecessary delay or cause a needless increase in the cost of litigation, provide false information or advance untenable legal positions should a court consider the imposition of sanctions upon a debtor's attorney. Berg also filed the affidavit of April Goodsell, his legal assistant, in which she narrates her participation in the preparation of the Debtors' most recent Chapter 13 petition. She indicates that because the Debtors had filed prior petitions through Berg's office and their "information was in our computer system," at Berg's request she, rather than he, prepared the Petition for them. Goodsell acknowledged that while certain necessary information was missing from the Petition she nevertheless advised Berg that it was signed and ready to be "uploaded." She attributes her omissions to the fact that it was the week of October 17, 2005, and that she became very busy "due to a number of people requesting last minute filings and a few other minor emergencies." She goes on to note that "[w]e received a Conditional Order in this case" and that "[s]oon after receiving the Conditional Order, we made all of the necessary corrections to the Petition, and filed a confirmable Chapter13 Plan." ( *See* Affidavit of April Goodsell, sworn to July 24, 2006).

## DISCUSSION

An examination of the electronic docket of the Debtors' most recent Chapter 13 case does not support Ms. Goodsell's version of the events leading up to the dismissal of the case. Read in a light most favorable to Berg, her assertion is that as soon as the known and obvious deficiencies in the Debtors' Petition and Plan were documented in a Conditional Order of the

Court, the necessary corrections were made and a confirmable plan was filed. According to the electronic docket, however, at the confirmation hearing held with regard to the initial plan on December 20, 2005, to which the Internal Revenue Service interposed an objection, the Court denied confirmation of the initial plan and directed the Debtors to file a new plan and provide notice of a confirmation hearing on the new plan on or before 15 days from the date of the order or face dismissal of their case with a bar to re-filing a Chapter 13 case for a period of 180 days from the date of the order. (*See* Conditional Order of Dismissal With Prejudice and Order Denying Confirmation dated December 29, 2005). It appears that Berg did not even appear at the confirmation hearing and ultimately did not fully comply with the December 29, 2005 Order by failing to file a new plan and failing to notice it for confirmation.[3]

    Berg cites to the decision of the U.S. Court of Appeals for the Second Circuit in *Matter of Cohoes Indus. Terminal, Inc.,* 931 F.2d 222 (2nd Cir. 1991), which is arguably the seminal case in this Circuit on the issue of sanctionable conduct of an attorney for filing a frivolous bankruptcy petition. The Second Circuit observed that, "[a] petition for Chapter 11 bankruptcy may be deemed frivolous if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." *Id.* at 227. Berg contends that the Debtors "filed this chapter 13 petition with the sole intent of making timely payments to the Internal Revenue Service on the outstanding debts." (Memorandum of Law dated May 18, 2006). The Second

---

[3] Berg has argued to this Court that he did, in fact, comply with the Conditional Order of December 29, 2005, by filing an amended plan and amended Schedules I and J on January 11, 2006. He further argued that he did not notice the amended plan for confirmation because the docket indicated an adjourned confirmation hearing was already scheduled for February 21, 2006. The Court, nevertheless, dismissed the Debtors' case by Order dated February 1, 2006.

7

Circuit noted that "[f]iling a bankruptcy petition with the intent to frustrate creditors does not by itself 'establish an absence of intent to seek rehabilitation." (citations omitted) *Id.* at 228.

A review of the Summary of Schedules filed by the Debtors on October 14, 2005, indicates that the Debtors had total assets of $257,785, with total liabilities of $44,990.42.[4] Debtors' assets consisted of a residence at 5215 Winterton Drive, Fayetteville, New York, having an alleged value of $200,000, household goods valued at $10,285, separate personal property of the Debtor James Light valued at $500, a 1999 Ducati motorcycle and two 1999 Kawasaki motorcycles valued at $13,000, two 2001 Polaris snowmobiles and a trailer valued at $8,000 and a 2001 Mercedes Benz motor vehicle valued at $26,000. On Schedule D, filed with the Petition, Debtors listed as secured creditors Charter One Auto Finance, having a lien on the Mercedes motor vehicle securing $28,562.60, First Niagara Bank, as having a lien on the motorcycles securing $12,168.83, and a lien on the snowmobiles and trailer securing $9,259.39. No creditor was listed as holding a mortgage on the Winterton Drive property. On Schedule E, the Debtors listed both the Internal Revenue Service and New York State Department of Taxation and Finance as priority creditors with the amount of those claims listed as "unknown." On Schedule F, filed with the Petition, no creditors were listed as holding unsecured non-priority claims. On Debtors' Schedule I, filed with the Petition, which is entitled Current Income of Individual Debtor(s), the Debtors listed their total monthly income as $0. No other information required by that Schedule was filled in. On Schedule J, filed with the Petition, entitled Current Expenditures of Individual Debtor(s), the Debtors listed their projected monthly expenses also as $0. This

---

[4] On February 13, 2006, eleven days after entry of the Dismissal Order, the Debtors filed an Amended Summary of Schedules in which they listed total assets of $231,885 and total liabilities of $604,522.56.

Schedule also reflected that the Debtors intended to pay $0 per month into their Chapter 13 Plan. On January 11, 2006, some 3 months after the filing of their Chapter 13 case, and nine days after entry of the Dismissal Order, the Debtors filed Amended Schedules I and J. Amended Schedule I now reflects a gross monthly income of $12,000, apparently being earned by Debtor James Light. His net monthly income was indicated at $10,013.05. As was the case with the original Schedule I, none of the other information requested on that Schedule was provided. Amended Schedule J now lists the Debtors' projected monthly expenses of $6,325 and a projected Chapter 13 plan payment of $3,688.05.

Filed with the Debtors' Petition and Schedules, on October 14, 2005, was a proposed Chapter 13 Plan. The Plan indicated that the Debtors would pay $0.00 to the Chapter 13 Trustee for a period of 36 months. The Plan further indicated at ¶ 2 that there were no priority, secured or unsecured creditors that would be paid under the Plan. Accordingly, the dividend to unsecured creditors was indicated as "0.00 percent." (*See* Debtors' Original Chapter 13 Plan dated October 14, 2005). Again on January 11, 2006, Debtors filed an Amended Chapter 13 Plan. The Amended Plan proposed to pay the Chapter 13 Trustee $3678.06 per month for approximately 60 months. The Amended Plan listed Berg and the Internal Revenue Service as priority creditors, but no secured creditors. As for unsecured non priority creditors, the Amended Plan indicated that their claims totaled $114,240.83 (though no unsecured non priority creditors were listed on Schedule F), and they would receive a dividend of not less than "2.0 percent." (*See* Debtors' Amended Chapter 13 Plan, dated January 11, 2006).

In determining whether or not Berg should be sanctioned, the Court must focus on the Petition, Schedules and Plan, filed with this Court on October 14, 2005. In an effort to deflect

9

criticism from himself, Berg has filed the Goodsell Affidavit in which his legal assistant acknowledges that she caused the Debtors to sign their Petition even though she "did not inform Mr. Berg that considerable information was missing from the Petition." (*See* Affidavit of April Goodsell, sworn to the 24th of July 2006 at ¶ 12A). She notes further that "[t]he clients signed the Petition and did not look carefully at all the forms to determine the information was complete and accurate." (*Id.* at ¶ 11). She then goes on to explain that, while it was customary for Berg to review documents prior to their being filed with the Court, that procedure was not followed on or about October 14, 2005 due to the "rush of filing a number of last minute petitions and getting other work out of the office." (*Id.* at ¶ 17).

Clearly, an attorney cannot avoid the imposition of sanctions by asserting that he delegated a function as significant as the preparation and filing of a bankruptcy petition to a member of his office staff. As noted in *In re Engel*, 246 B.R.784 (Bankr. M.D. Pa. 2000), "[a]ttorney Bresset's attempt to minimize his culpability for these incorrect filings by shifting the responsibility for the errors on the alleged drafter, be it an associate or a non-lawyer assistant, is of little account . . . . Regardless of who drafted the schedules, Bresset's obligation to competently represent his client required him to review the documents with his clients before they became a part of the public record." *Id.* at 794. Here both Berg and Goodsell contend that the failure to file an accurate Petition and Schedules on October 14, 2005 was due in part to the "rush to file this Petition prior to October 17, 2005, the date the new Bankruptcy Code took effect." This Court cannot conclude that either of these assertions provides Berg with a defense to the imposition of sanctions pursuant to Fed.R.Bankr.P. 9011.

Berg also seems to place great weight on the assertion that when his office was served

10

with the Conditional Order of Dismissal dated December 29, 2005, he then undertook the careful analysis of the Debtors' financial situation, which he had admittedly failed to do prior to October 14, 2005, in an effort to file an amended plan and amended relevant schedules. It would seem, however, that Berg engages in misplaced emphasis. This Court, in determining whether or not Berg should be sanctioned, must focus its attention on the documents filed on October 14, 2005, rather than on documents subsequently filed in an effort to correct the prior deficiencies. Likewise, this Court believes that Berg's reliance on the Second Circuit's decision in *Cohoes Indus. Terminal* is misplaced. The primary thrust of *Cohoes Indus. Terminal* was the bankruptcy court's erroneous conclusion, *inter alia*, that the debtors had filed a petition solely to interfere with the enforcement of a state court judgment by making both a vexatious and unwarranted argument and without a sincere intent to reorganize, was sanctionable. The Second Circuit concluded that such conduct did not rise to the level of sanctionable conduct under either Fed.R.Bankr.P. 9011 or 28 U.S.C. § 1927. Berg's conduct, complained of here, is the filing of admittedly deficient and misleading schedules for Debtors he had represented either jointly or singularly in three prior bankruptcies within a span of slightly more than 2 years, and offering as apparently the sole justification the impending effective date of a new bankruptcy law. Similarly, Berg relies on a number of other cases that are factually distinguishable. Those case are essentially "bad faith filing" cases, wherein sanctions were sought against debtor's attorney. As alleged by Berg here, the Debtors acted in good faith with every intention of confirming a chapter 13 plan, albeit their third such plan.

      The conduct the Court focuses on, as asserted by the Trustee, is Berg's filing of a petition and schedules significantly lacking in factually accurate information asserted in support of a

11

legally untenable Chapter 13 plan, all of which is said to be justified by some theory of necessity occasioned by the impending effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. The question, simply put, is whether or not this Court should tolerate such conduct by an officer of the Court. Courts have generally dealt harshly with attorneys who have allowed their clients to file bankruptcy petitions and schedules with little regard to their accuracy, particularly where the attorney has represented the debtor in prior bankruptcy cases before that court.

>Fed.R.Bankr.P. 9011 provides in pertinent part as follows:
>
>(b) REPRESENTATIONS TO THE COURT. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,– . . . . (2) the claims, defenses, and other legal contentions therein are warranted by existing law or a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

As noted by the Trustee, the Debtors' October 14, 2005 Petition and Schedules contained numerous omissions and inaccuracies. The Petition indicated one prior bankruptcy for Debtors when, in fact, there were two prior joint petitions and one prior single petition filed by James D. Light. Schedule I, Current Income of Individual Debtors, was only partially completed, and the information that was provided listed no income for either Debtor. Schedule J, Current Expenditures of Individual Debtors, listed no expenses for either Debtor. Schedule A listed the real property owned by the Debtors as 5215 Winterton Drive, Fayetteville, New York, but failed to disclose any claim secured by the property. In Schedule B, Debtors failed to disclose

ownership of stock in Optimal Strategies, Ltd. On Schedule D, Debtors failed to disclose a debt to Syracuse Securities, secured by a mortgage on the Debtors' real property. Schedule D lists Charter One Auto Finance as holding a lien on Debtors' motor vehicle when, in fact, as of October 14, 2005, that lien had been paid off. On Schedule E, while the Debtors listed the Internal Revenue Service and the New York State Department of Taxation and Finance as priority creditors, they failed to list the amount of the debt to the respective taxing authorities. Berg's Disclosure of Compensation of Attorney for Debtor, rather than indicating a lump sum fee, indicates that he was to bill the Debtors at the rate of $200 per hour, and he provided no response to the question of whether or not he received any compensation from the Debtors pre-petition. Finally, the Debtors' Chapter 13 plan indicated that they would pay nothing to the Trustee for a period of 36 months and unsecured creditors would receive a "0.00 percent" dividend.

It appears to this Court that Berg's sole motivation in filing the October 14, 2005 Petition and Schedules was simply to avoid the impending effective date of the new statute because, presumably, Berg had reached some legal conclusion that a filing under the new statute would not be as beneficial to his clients. While that motivation is not likely to invoke sanctions under Fed.R.Bankr.P. 9011, it is the methodology utilized by Berg that will. Filing of a bankruptcy petition is a serious matter, if for no other reason than it invokes the automatic stay by operation of law. *See In re Smith*, 257 B.R. 344, 351 (Bankr. N.D. Ala. 2001). The creation of the stay bars all creditors from proceeding against the debtor in any forum and prevents them from utilizing any process by which they might collect an otherwise legally enforceable debt. It impacts on secured and unsecured creditors alike. Because the filing of a bankruptcy petition arms the debtor with a bundle of legal rights, including the stay, it carries with it a serious

13

obligation to provide the bankruptcy court, as well as parties in interest, with accurate and complete information in the petition and schedules.  Factually erroneous and/or incomplete information in the petition and schedules cannot be tolerated, and this is especially true when counsel has represented the debtor(s) in a prior case or cases filed in relatively close proximity to the sanctionable filing.

In the case at bar, it is clear to the Court that Berg did not consider the filing of the Debtors' third joint Chapter 13 Petition a serious matter.  Whether or not he delegated the task of preparing and filing the Petition to a member of his staff or prepared it himself is of little consequence.  Failure to accurately disclose the number of prior filings by the Debtors, either individually or jointly; failing to disclose all of the assets of the Debtors; omitting significant liabilities while including non-existent debts; failing to quantify priority debts where those debts had been quantified in prior petitions filed by the same Debtors; failure of Berg to accurately complete and disclose the compensation he had been paid or that the Debtors had agreed to pay him in the future; failure of the Debtors to disclose the amount of their income and expenses on a monthly basis;  and, finally, filing a chapter 13 Plan proposing payment of $0.00 for 36 months resulting in a 0.00 percent dividend to unsecured creditors, as well as indicating that Debtors had no secured or priority creditors to be treated in the Plan, are all very serious omissions.

Any number of courts considering similar conduct by a debtor's attorney have imposed sanctions utilizing Fed.R.Bankr.P. 9011. *See In re Bailey*, 321 B.R. 169 (Bankr. E.D. Pa 2005); *In re Dent*, 275 B.R.625 (Bankr. M.D. Ala. 2002); *In re* Nicola, 258 B.R. 329 (Bankr. E.D. Pa.), *rev'd on other grounds*, 2001 WL 34371704 (E.D.Pa. 2001), *reconsideration denied,* 2002 WL

14

32348548 (E.D. Pa. 2002), *aff'd sub nom. Piscitelli v. Mirow,* 65 Fed.Appx. 759 (3d Cir. 1003);[5] contra *In re Kelley* 255 B.R. 783 (Bankr. N.D. Ala. 2000). This Court, likewise, is of the opinion that the conduct of Debtors' counsel warrants the imposition of sanctions.[6]

Therefore, the Court will impose a monetary sanction on Berg in the sum of $1,000, and direct that he pay $500 of said amount to the Chapter 13 Trustee as compensation for the Trustee's services in connection with his request for sanctions, with the remaining $500 to be paid to the Clerk of Court. Payment shall be made not later than 45 days from the date of this Order. The Court notes that there has been no request for sanctions against the Debtors. While the Court is of the opinion that they bear some responsibility for the infirmities contained in the Petition and Schedules filed on October 14, 2005, it also believes that the culpability of the Debtors pales in comparison to that of Berg. Accordingly, the Court will not impose any sanctions on the Debtors and directs that no portion of the monetary sanction awarded herein shall be in any way charged against the Debtors.

---

[5] In *Piscitelli v. Mirow,* the Court of Appeals for the Third Circuit extended the "supervisory rule" to bankruptcy courts and determined that the bankruptcy court erred in awarding sanctions "under its inherent powers" after the order dismissing the case became final. *Piscitelli v. Mirow*, 65 Fed.Appx. at 763. This Court has found no other cases, other than in the Third Circuit, to have applied the "supervisory rule." Indeed, in *In re Whitney Place Partners*, 123 B.R. 117 (Bankr. N.D. Ga. 1991), *aff'd,* 966 F.2d 681 (11th Cir. 1992), the court concluded that the fact that the case had been dismissed did not deprive the court of jurisdiction to hear a motion for Rule 11 sanctions. *Id.* at 120. In this case, it is the Debtors who have sought reconsideration of the Order dismissing the case. If this Court is to have the jurisdiction to address the relief sought by the Debtors, its jurisdiction should also extend to the relief sought by the Trustee pursuant to Fed.R.Bankr.P. 9011.

[6] Though not raised by Berg, the so called "safe harbor" provisions contained in Fed.R.Bankr.P. 9011(c)(1)(A) are deemed to be inapplicable to the filing of a bankruptcy petition. *See In re Silberkraus*, 253 B.R. 890, 912 (Bankr. C.D. Cal.2000), *aff'd,* 336 F.3d 864 (9th Cir. 2003).

15

As indicated above, while the Court orally denied Debtors' motion to vacate the Dismissal Order previously, no written order has been entered to date and, therefore, this Order shall constitute a denial of that motion as well.

IT IS SO ORDERED.

Dated at Utica, New York

this 21st day of December 2006

/s/   Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge